IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JERALD JOHNSON,<br><br>　　　　　　Plaintiff,<br><br>　　v.<br><br>AMERICAN SIGNATURE, INC., d/b/a<br>VALUE CITY FURNITURE,<br><br>　　　　　　Defendant. | Case No. 11 C 6467<br><br>Hon. Harry D. Leinenweber |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Jerald Johnson ("Johnson") was fired after he urinated into a cup in front of a co-worker. Johnson, who claims to suffer from "urinary urgency" and other health problems, brings this suit against his former employer, American Signature, Inc. ("ASI"), contending that ASI discriminated against him and failed to accommodate his disability in violation of the Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq.* (the "ADA"). ASI has moved for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. ECF No. 55. For reasons stated herein, the Motion is granted.

I.　BACKGROUND

The background facts are derived principally from the parties' Local Rule 56.1 submissions and are undisputed except where noted.

ASI is a furniture dealer that operates numerous retail shops throughout the United States. On April 5, 2010, Joseph Gagne

("Gagne"), the General Manager of an ASI store in Burbank, Illinois, hired Johnson for a position as a Home Furnishings Consultant. During his interview, Johnson informed Gagne that he experienced mobility problems relating to a previous stroke and hip replacement surgery. Johnson advised Gagne that, as a consequence of this condition, he suffered from a limp and weakness on the right side of his body that made it difficult for him to walk immediately after standing up from a seated position. Johnson also used a cane, although he did not have it with him on the day of the interview and apparently did not mention his need for one.

In addition to his mobility issues, Johnson also struggled with "urinary urgencies" that had developed following his hip replacement surgery. As a result, Johnson frequently experienced a sudden need to urinate and, at times, would have to relieve himself in a cup, which he kept in his car for occasions when he was unable to make it to a restroom while driving. Johnson did not advise Gagne of this condition during his interview.

Sometime after he began working at ASI, a co-worker told Johnson that he had overheard Gagne remark that he was "unhappy" that Johnson used a cane. The co-worker stated that Gagne had wondered aloud whether the cane would "hinder" Johnson in any way.

On June 3, 2010, Johnson was sitting in an employee break room with a co-worker named Tomas Medina ("Medina"). As Johnson stood up to return to work, he felt a sudden and urgent need to urinate.

Sensing that he would be unable to reach the restroom in time due to his decreased mobility, Johnson shuffled to a corner of the room and urinated into a cup. While making his way across the room, however, Johnson lost control and dribbled some urine onto the floor. Setting the cup of urine onto the counter, Johnson then attempted to wash the area with water and cleanser. As he was cleaning up, Johnson received a call directing him to return to the sales floor to assist a customer. Before leaving the room, he poured the excess water and cleanser down the drain and placed the cup of urine underneath the sink. When Johnson returned a short time later, he retrieved the cup of urine from beneath the sink and disposed of it in the restroom.

Medina, who was eating lunch at the time, was offended by Johnson's conduct and reported the incident to Gagne. Later, Medina submitted a signed statement to Gagne describing what he had witnessed. The version of events recounted in the statement differs slightly from Johnson's recollection, but the discrepancy is not material. (Medina indicated that Johnson emptied the cup of urine not in the bathroom but, rather, into the break room sink where other employees typically washed their hands and dishes.)

On June 5, 2010, Gagne met with Johnson to discuss the incident. Johnson explained that he "didn't have time" to make it to the restroom and offered to wear Depends going forward in order to prevent a similar incident from occurring in the future.

Johnson also claims to have conveyed to Gagne that he suffered from medical issues associated with urinary urgency, (*see*, Pl.'s Ans. to Def.'s 56.1 Stmt. of Facts ("Pl.'s Resp. Stmt.") ¶ 44, ECF No. 62), but there appears to be no evidence in support of that assertion and the portion of deposition testimony that Johnson cites in his statement of facts was not included in the record submitted to the Court. Gagne's only recollection of the conversation was that Johnson admitted that he had urinated into a cup in the break room. He did not recall Johnson saying anything about his urinary urgency or any other medical condition.

Following their meeting, Gagne suspended Johnson pending the outcome of his investigation into the incident. Gagne then spoke to ASI's regional manager, John Mickels ("Mickels"), and the Director of Human Resources, Linda Esparza ("Esparza"), about the situation. All three agreed that Johnson's conduct warranted termination because it violated ASI's policy against "personal conduct which substantially impairs the associate's ability by reason of its detrimental effect either on the associate's relationship with other associates or the business or reputation of the company." Def.'s 56.1 Stmt. of Facts ("Def.'s Stmt.") ¶¶ 34, 38, ECF No. 57.

On June 8, 2010, Gagne called Johnson into his office and informed him that his employment at ASI was being terminated. Johnson alleges that he sought to explain to Gagne that he did not

want to urinate in his suit and that Gagne responded that he would have "pissed himself and still [had] a job." Pl.'s 56.1 Stmt. of Facts ("Pl.'s Stmt.") ¶ 24, ECF No. 61. Again, however, the evidence Johnson cites in support of that assertion cannot be found in the record before the Court.

Following his termination, Johnson applied for and received Social Security Disability Insurance ("SSDI") benefits for the time period beginning June 8, 2010, to the present. In connection with his application for benefits, Johnson made a number of statements under oath indicating that he could no longer work because he was disabled. Despite these representations, Johnson continued to seek employment and applied to numerous furniture salesperson positions throughout the Chicagoland area. Johnson's applications were unsuccessful, however, and he has not worked since ASI terminated him.

## II. LEGAL STANDARD

Summary judgment is appropriate where the moving party "shows that there is no genuine dispute as to any material fact and [it] is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A dispute is "genuine" if the evidence would permit a reasonable jury to find for the non-moving party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). A fact is material if it might affect the outcome of the suit. *Id.* If the moving party satisfies its burden, the non-movant must present evidence sufficient to

demonstrate that a genuine factual dispute exists. *See, Celotex Corp. v. Catrett,* 477 U.S. 317, 323-24, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). In doing so, the non-moving party "must do more than show that there is some metaphysical doubt as to the material facts." *Sarver v. Experian Info. Sys.,* 390 F.3d 969, 970 (7th Cir. 2004). Rather, it must demonstrate "through specific evidence that a triable issue of fact remains on issues for which the nonmovant bears the burden of proof at trial." *Knight v. Wiseman,* 590 F.3d 458, 463-64 (7th Cir. 2009).

### III. ANALYSIS

#### A. Disability Discrimination

Johnson alleges that ASI discriminated against him by terminating his employment because he suffered from mobility problems and urinary urgency. The ADA makes it unlawful for employers to discriminate against a "qualified individual with a disability because of [his] disability." 42 U.S.C. § 12112(a). A "qualified individual" is someone "who, with or without reasonable accommodation, can perform the essential functions of the employment position" in question. 42 U.S.C. § 12111(8). A plaintiff may demonstrate unlawful disability discrimination either through direct or circumstantial evidence of intentional discrimination, or indirectly through a subset of circumstantial evidence that conforms to the burden-shifting framework set forth by the Supreme Court in *McDonnell Douglas Corp. v. Green,* 411 U.S.

792, 801-03 (1973). *See, Dickerson v. Bd. of Trs. of Cmty. Coll. Dist. No. 522,* 657 F.3d 595, 601 (7th Cir. 2011). Because Johnson has elected not to present any evidence under the indirect method of proof, (*see,* Pl.'s Resp. to ASI's Mot. for Summ. J. ("Pl.'s Opp. Mem.") at 10-11, ECF No. 63), the Court evaluates his claim under the direct method only.

Johnson argues that ASI's discrimination in this case is evidenced by the fact that he would not have been terminated "but for" an event that occurred because of his urinary disabilities. Pl.'s Opp. Mem. at 10. Although there may be some truth to that assertion, mere "but for" causation is never sufficient to support a claim under the ADA. *Siefken v. Village of Arlington Heights,* 65 F.3d 664, 666 (7th Cir. 1995). Rather, the plaintiff must point to facts that demonstrate that his discharge was motivated by his employer's impermissible animus toward his disability. *See, Kersting v. Wal-Mart Stores, Inc.,* 250 F.3d 1109, 1115 (7th Cir. 2001). That the conduct for which Johnson was terminated may be traceable ultimately to his disability does not mean *ergo* that ASI discriminated against him.

Johnson also contends that a discriminatory inference can be drawn from the fact that Gagne was aware of Johnson's disabilities prior to terminating him. Such an inference would be plainly speculative, however, and, in any event, Johnson overstates the extent to which Gagne knew about his disabilities. Indeed, while

Johnson told Gagne about his mobility problems, there is no evidence in the record that Johnson ever informed Gagne that he also suffered from urinary urgency. It is difficult to see how Gagne could have discriminated against Johnson on the basis of a disability he knew nothing about.

Although Johnson also alleges that Gagne once commented negatively about him using a cane, the Seventh Circuit has held repeatedly that "isolated comments that are no more than stray remarks in the workplace are insufficient to establish that a particular decision was motivated by discriminatory animus." *Hemsworth v. Quotesmith.com, Inc.,* 476 F.3d 487, 491 (7th Cir. 2007) (quotation omitted). Since Gagne's single remark was made neither at or the near the time of nor in reference to Johnson's discharge, it fails to suffice as evidence of ASI's discriminatory intent. *See, Merillat v. Metal Spinners, Inc.,* 470 F.3d 685, 694-95 (7th Cir. 2006).

Moreover, where an individual is hired and fired by the same supervisor, as was the case here, an inference arises that the individual's termination was not the result of any improper discriminatory motive. *Johnson v. Zema Sys. Corp.,* 170 F.3d 734, 744-45 (7th Cir. 1999). Although that inference alone might not be sufficient to support summary judgment, "it's one more thing stacked against [Johnson]." *Martino v. MCI Communications Servs., Inc.,* 574 F.3d 447, 455 (7th Cir. 2009).

Because Johnson fails to adduce any other evidence tending to show that ASI terminated him for discriminatory reasons, the Court grants summary judgment in favor of ASI on Johnson's disability discrimination claim.

## B. Failure to Accommodate

Johnson also argues that ASI violated the ADA by failing to provide a reasonable accommodation for his disability. The ADA requires that employers make "reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability, unless [the employer] can demonstrate that the accommodation would impose an undue hardship on the operation of the business of [the employer]." 42 U.S.C. § 12112(b)(5)(A). In establishing a failure to accommodate claim, a plaintiff must show that (1) he is a qualified individual, (2) the employer was aware of his disability, and (3) the employer failed to provide a reasonable accommodation for that disability. *Kotwica v. Rose Packing Co.,* 637 F.3d 744, 747-48 (7th Cir. 2011).

Johnson's retaliation claim suffers from many infirmities, not the least of which is that there is no evidence that ASI had knowledge of his urinary urgency prior to terminating him. Because "an employee's initial duty requires that he or she indicate to the employer that she has a disability and desires an accommodation," *Cloe v. City of Indianapolis,* 712 F.3d 1171, 1176 (7th Cir. 2013),

ASI can hardly be held accountable for failing to accommodate a condition that Johnson chose not to disclose.

Johnson's claim is impeded further by the fact that he was aware of his inability to manage his urinary urges, yet never made any effort to ameliorate his condition. As the Seventh Circuit has explained, "[a] plaintiff cannot recover under the ADA if through his own fault he fails to control an otherwise controllable illness." *Van Stan v. Fancy Colours & Co.,* 125 F.3d 563, 570 (7th Cir. 1997). It is undisputed that Johnson knew for quite some time before the break room incident that he suffered from urinary urgency. Indeed, he admitted that he kept a cup in his car for times when had lost control in the past. Moreover, Johnson's offer to wear Depends confirms that he was aware that his condition could have been managed through the use of protective undergarments. His failure to take this or any other reasonable step to control his urinary urgency prior to the break room incident is inexplicable and, thus, precludes his recovery under the ADA. *See, e.g., Nunn v. Ill. State Bd. of Ed.,* 448 F.Supp.2d 997, 1001 (C.D. Ill. 2006) (employee's refusal to seek treatment for her bipolar disorder doomed her reasonable accommodation claim); *Brookings v. Indianapolis Power & Light Co.,* 90 F.Supp.2d 993, 1006 (S.D. Ind. 2000) (Tinder, D.J.) (employee's failure to control his depression and anxiety prevented him from stating a claim under the ADA).

Finally, Johnson's proposal that he be permitted to wear Depends was not an accommodation that was within ASI's discretion to provide. In *Siefken v. Village of Arlington Heights,* the Seventh Circuit explained that a workplace adjustment exclusively within the employee's control is not an accommodation within the meaning of the ADA. *Siefken v. Village of Arlington Heights,* 65 F.3d at 666; *see also, Hill v. Kansas City Area Transp. Auth.,* 181 F.3d 891, 894 (8th Cir. 1999). There, the plaintiff, a police officer, was fired after he suffered a severe diabetic reaction that caused him to lose control over his squad car. The plaintiff contended that his employer violated the ADA because it failed to allow him an opportunity to alter his diabetes monitoring technique prior to terminating him. The court rejected this argument for two reasons: first, because the plaintiff's requested accommodation essentially was tantamount to asking for a "second chance," which "is not a reasonable accommodation, as envisioned in the ADA"; and second, because the requested accommodation was solely within the employee's control. *Siefken,* 65 F.3d at 666; *see also, Davila v. Qwest Corp., Inc.,* 113 Fed. App'x 849, 854 (10th Cir. 2004) ("As many cases have recognized in various contexts, excusing workplace misconduct to provide a fresh start/second chance to an employee whose disability could be offered as an after-the-fact excuse is not a required accommodation under the ADA.").

Here, Johnson's decision to wear or not wear protective undergarments was a choice that was up to him alone. That he elected not to do so was his own matter and his belated offer to wear Depends cannot be viewed as anything other than an appeal to ASI for an opportunity to be allowed another chance to take steps to better control his urinary urgency. That is precisely the type of accommodation that *Siefken* made clear is not required under the ADA. Consequently, Johnson's failure to accommodate claim must be rejected.

### IV. CONCLUSION

For the reasons stated herein, ASI's Motion for Summary Judgment [ECF No. 55] is granted.

**IT IS SO ORDERED.**

　　　　　　　　　　　　　　　　　　　Harry D. Leinenweber, Judge
　　　　　　　　　　　　　　　　　　　United States District Court

Date:3/26/2014